1
2
3
4
**UNITED STATES DISTRICT COURT**
5
**DISTRICT OF NEVADA**
6
7   LEE MURRAY SYKES,                    )
                                         )
8                   Petitioner,          )        2:10-cv-00494-GMN-LRL
                                         )
9   vs.                                  )
                                         )        ORDER
10  ANTHONY SCILLIA,  et al.,            )
                                         )
11                  Respondents.         )
12  _____ /

13

14          This matter is before the Court on respondents' answer to the surviving grounds of the

15  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Lee Murray Sykes

16  (ECF No. 36). Petitioner has file his reply (ECF No. 39).  The matter is fully briefed.

17  **I.      Procedural History**

18          In March of 2006, petitioner was convicted in Clark County, Nevada, on six of eight

19  criminal charges including attempted murder, battery with a deadly weapon resulting in substantial

20  bodily harm, first degree kidnaping with the use of a deadly weapon, two counts of attempted murder

21  and burglary.  Exhibit 50, pp. 78-81, Exhibit 54.[1]  He was further convicted of being a felon in

22  possession of a firearm.  Exhibit 50, p. 83, Exhibit 55.

23          Petitioner moved for a new trial asserting improprieties including (1) comments by the

24  judge about defense counsel during voir dire; (2) comments and reactions by jurors during the trial; and

25  _____

26      [1]  The "Exhibits" referenced in this order were submitted by respondents in support of their
    motion to dismiss and are found in the court's docket at ECF No.12.  Additionally, petitioner's exhibits
    are identified as such when applicable.

(3) the defense's inability to recall a witness during it's case in chief due to a demonstration blocking the entrance of the courthouse. Exhibit 56. The motion was opposed and denied following a hearing. Exhibits 56-59.

Petitioner also made a motion to dismiss Count II, battery with a deadly weapon, arguing the charge merged with the charge of attempted murder. Exhibit 60. The count was dismissed before sentencing. A judgment of conviction was entered on May 24, 2006. Exhibit 62. Petitioner appealed raising nine claims of error. Exhibit 64. The conviction was affirmed by the Nevada Supreme Court on September 21, 2007. Exhibit 67.

On post-conviction review, petitioner raised seven grounds for relief all alleging ineffective assistance of counsel. Exhibit 72. The trial court denied the petition and petitioner appealed. Exhibits 76 and 77. The Nevada Supreme Court addressed his claims and denied relief on January 7, 2010. Exhibit 78. Thereafter, petitioner filed his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No.1).

In his federal petition, petitioner raised five grounds for relief which are summarized as:

I.    The State failed to preserve evidence.

II.   Ineffective Assistance of Counsel: trial counsel failed to obtain neurological or psychiatric testimony addressing petitioner's mental state at the time of the offense.

III.  Due Process violations:
      A.    State used tampered evidence during trial.
      B.    Juror #13 should have been dismissed because of his English language proficiency.

IV.   Ineffective Assistance of Counsel:
      A.    Counsel failed to recall Yvonne Ross.
      B.    Counsel failed to impeach witnesses on inconsistent statements.

V.    Cumulative Error

After determining the outcome of respondents' motion to dismiss and allowing petitioner more than one opportunity to seek a stay of the proceedings to permit exhaustion, grounds 3(b) and 4 were dismissed from the petition with prejudice as unexhausted.

**II.     DISCUSSION**

     Respondents argue that the petition should be denied.

     A.     <u>Legal Standard</u>

          28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).  Therefore, this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

     A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

     A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

If there is no reasoned decision upon which the court can rely, then it must make an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000).

      B.   <u>Analysis</u>

             <u>Ground One</u>

Petitioner claims his rights to a fair trial and due process were violated because the State failed to preserve certain evidence which would have been used to support petitioner's theory of defense - that he was not the original aggressor. Petitioner argues that the State wrongfully released his automobile from impound only eight days after the crime, that there was evidence in the vehicle that would show that the victim was the original aggressor, because she pulled a gun from her oversized purse and shot at him while inside the vehicle. Further, petitioner argues that the state's failure to disclose the fact of the release for more than two years while the case was pending, and its failure to record any information about the individual to whom the vehicle was released, denied him due process.[2]

---

[2] The release form indicates the vehicle was released to the registered owner. Petitioner's Exhibit 12 (ECF No. 1-2). Petitioner insists that he is the registered owner and that, because he was a fugitive from the law at the time of the release, he could not have received the vehicle.

1         The failure to preserve evidence is a different but related matter than a failure to disclose

2    material evidence that the State knows to be exculpatory, as was the case in *Brady v. Maryland,* 373 U.S.

3    83, 83 S.Ct. 1194 (1963).  In *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337 (1988), the

4    United States Supreme Court held that the failure of police to preserve potentially useful evidence is not

5    a denial of due process unless the defendant is able to show that the police acted in bad faith.

6         Despite his assertions that the State acted in bad faith, petitioner fails to actually

7    demonstrate the fact.  First, testimony from the investigating officer who examined the automobile for

8    evidence indicated that she felt there was nothing of evidentiary value remaining in the car and that its

9    release was part of the normal course of events under those circumstances.  Second, there were

10   photographs of the auto's windshield which show the bullet holes and photos of the passenger-side floor

11   board where the victim's shoes lie next to a bullet cartridge - items that petitioner believes hold some

12   evidentiary value for his self-defense theory.  Third, the investigating officer testified that she was unable

13   to determine from the holes in the windshield whether the shots had been fired from the inside or the

14   outside of the vehicle and there was no way to determine when the blood that was on the auto's rear air

15   foil actually got there.  Exhibit 48, pp. 40 and 48.

16        More to the point, petitioner has not demonstrated that the Nevada Supreme Court's

17   decision on this claim was objectively unreasonable in light of federal law as established by the United

18   States Supreme Court.  The state court highlighted the strong evidence that petitioner had been the

19   aggressor including testimony that he had "beat the victim with his fist, had attempted to shoot two

20   witnesses who interceded in the altercation and had chased the fleeing victim to a convenience store and

21   shot her while she ran inside."  Exhibit 67, p. 3.  The court further found that there was no indication

22   that petitioner had been injured (that it was his blood on the car) or that he had been shot at.  *Id.*  And,

23   as respondents point out, under Nevada law, once a person leaves the scene of the initial aggression in

24   pursuit of the aggressor, the right to self-defense is lost.  *See Williams v. State,* 91 Nev 533, 539 P.2d

25   461 (1975); *see also Mirin v. State,* 93 Nev. 57, 560 P.2d 145 (1977).  Thus, petitioner's contention that

26   the release of the vehicle impaired his ability to bring a self-defense defense and thSt state acted in bad

1  faith in releasing the vehicle without giving notice to petitioner is without support in the law or in fact.

2  The Nevada Supreme Court's decision was not objectively unreasonable under 28 U.S.C. § 2254(d). No

3  relief is warranted on Ground One of the petition.

4                          Ground Two

5          Petitioner alleges he received ineffective assistance of counsel in violation of his rights

6  as guaranteed by the Sixth Amendment to the United States Constitution.  He contends counsel was

7  ineffective for failing to procure neurological and psychiatric testimony "addressing petitioner's own

8  mental state during the actual offense" despite indicating her intention to have petitioner undergo

9  additional psychological examination. Petitioner further complains that counsel was ineffective for even

10 allowing the matter to go to trial in the first place because of petitioner's well-documented history of

11 mental illness.  Petitioner argues that counsel failed to investigate and utilize the available medical

12 records which would have "created a solid foundation, to convince members of the jury, that Appellant

13 did in fact 'snap, or flip out'...during the events that unfolded on August 17, 2003." Petition, p. 5A

14 (punctuation in the original).

15          To establish ineffective assistance of counsel "a defendant must show both deficient

16 performance by counsel and prejudice." *Premo v. Moore*  131 S.Ct. 733, 739 (U.S., 2011) quoting

17 *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S.Ct. 1411, 1419 (2009).  "To establish deficient

18 performance, a person challenging a conviction must show that 'counsel's representation fell below an

19 objective standard of reasonableness.'" *Strickland v. Washington*, 466 U.S.668, 688, 104 S.Ct. 2052

20 (1984). A court considering a claim of ineffective assistance must apply a "strong presumption" that

21 counsel's representation was within the "wide range" of reasonable professional assistance.  *Id.*, at 689.

22 The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning

23 as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.  "With respect to

24 prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional

25 errors, the result of the proceeding would have been different.' *Id.* The question is whether an attorney's

26 representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated

1    from best practices or most common custom. *Id*. at 690.

2           Petitioner entered a special waiver of his preliminary hearing and, after being found

3    incompetent to stand trial by two doctors, he was transferred to Lake's Crossing for treatment.  Exhibits

4    6 and 7; *see also* Petitioner's Exhibits 17 and 18.  He was treated and determined to be competent to

5    stand trial on June 3, 2004.  Exhibits 8 and 9.  During a status hearing to address the finding of

6    competency and the proceedings thereafter, counsel requested that the court not enter the finding of

7    competence until petitioner was returned from Lake's Crossing and seen by counsel and the court.

8    Exhibit 8, p. 2.  Counsel sought to "keep the option open of being able to challenge his competency in

9    the District Court level" before he was remanded to Justice Court for preliminary hearing. *Id.* at 2-3.

10   The court believed it was necessary to sign the declaration of competency in order to have petitioner

11   transported from Lake's Crossing to permit matters to proceed, but indicated a willingness to entertain

12   any further motions based upon petitioner's condition once he was transported back into police custody.

13   *Id.* The record does not contain any indication that counsel sought additional psychiatric evaluation.

14          Respondents argue that petitioner offers nothing to show that he could have met the

15   requirements of the M'naghten rule (*R. v. McNaghten*, 1843 WL 5869 (House of Lords, 1843)), the

16   standard upon which Nevada relies in establishing an insanity defense.[3]  *See Finger v. State,* 117 Nev.

17   548, 27 P.3d 66 (2001).

18          The Nevada Supreme Court evaluated this claim under the *Strickland* standard and

19   determined that petitioner had failed to show any prejudice from counsel's failure to argue he was not

20   competent to stand trial in light of the psychiatric treatment and evaluation of competence he received

21   from Lake's Crossing.  Exhibit 78, p. 2.

22          Petitioner has not shown that the outcome of the trial would have been different if he had

23   had additional psychiatric evaluation or that an insanity defense would have been available.  The doctor's

24   _____

25        [3]  *M'Naughten*'s rule provides that: "[I]t had to be clearly proved that at the time of committing
     the act, the defendant was labouring under such a defect of reason as not to know the nature and quality
26   of the act he was doing, or, if he did know it, that he did not know that what he was doing was wrong."

1   at Lake's Crossing ultimately found him to be competent and he has not demonstrated that the finding

2   was wrong. Petitioner has not shown that the state court's determination of this claim was objectively

3   unreasonable in its factual findings or its application of clearly established federal law.  No relief is

4   warranted on ground two of the petition.

5                            Ground Three (B)

6              Ground three (B) claims that the trial court improperly seated juror 13 because the juror

7   "admitted in open court that they lacked knowledge and command of the English language."  Petition,

8   p. 7B.  Petitioner contends that during voir dire the juror was unable to answer simple questions about

9   "Citizenship, employment and criminal history or convictions." *Id.*  He further alleges that during trial

10  the juror sent a note to the court.  He argues that the juror's apparent language difficulties could have

11  rendered him more susceptible to the influence of other jurors.

12             In considering the claim for plain error in the absence of an objection by the defense when

13  the court failed to question the juror after the juror sent a note asking to be released "because the juror

14  did not like to speak in front of people and sometimes had trouble explaining his feelings in English."

15  the Nevada Supreme Court found that the court's determination that the juror did not need to be released

16  was not "plainly erroneous."  Exhibit 67, p. 6.  Respondents note that during voir dire the court

17  questioned the juror who expressed no concern at that time about his English skills.  The respondents

18  also note that there is no United States Supreme Court case law which provides a rule or requirement

19  applicable to this situation.  The court's research does not provide such a case either.  Petitioner, on the

20  other hand, argues the situation was structural error which requires a reversal without any showing of

21  prejudice, citing *Taylor v. Louisiana,* 439 U.S. 357, 99 S.Ct. 692 (1975).[4]  Petitioner offers no citation

22  to a United States Supreme Court case on point to his argument.

23             Thus, were petitioner has failed to identify such case law and, where he has failed to

24  demonstrate that the state court unreasonably determined the facts in light of the evidence, no relief is

25  ――――――――――――――

26          [4] Petitioner's citation does not identify a case by the name Taylor v. Louisiana.  Moreover, the cases named Taylor v. Louisiana that are found are actually instances where the United States Supreme Court has denied certiorari.

1  available on this claim from this court under 28 U.S.C. § 2254(d).  *See Alberni v. McDaniel,* 458 F.3d

2  860, 866 (9th Cir. 2006).

3              Ground Five

4              In this claim of cumulative error, petitioner argues that "the overall performance of

5  counsel was excessively jejune" creating cumulative error.   Reply brief (ECF No. 39), p. 11.

6              The cumulative error doctrine recognizes that the cumulative effect of several errors may

7  prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

8  *Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does *not* permit

9  the Court to consider the cumulative effect of *non-errors*.  *See Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir.

10  1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S. 473 (2000)("where there is no single

11  constitutional error existing, nothing can accumulate to the level of a constitutional violation").

12              In determining whether the cumulative effect of counsel's errors created a due process

13  violation, the Court must determine "whether the errors rendered the criminal defense 'far less

14  persuasive,'" such that there was a 'substantial and injurious effect or influence' on the jury's verdict."

15  *Parle v. Runnels,* 505 F.3d 922, 928 (9th Cir. 2007)(citations omitted).  The analysis must consider the

16  combined effect on the outcome, not the impact of each purported error taken alone.  *Chambers v.*

17  *Mississippi,* 410 U.S. 284, 290, n. 3, 93 S.Ct. 1038 (combined effect of individual errors "denied

18  [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived

19  Chambers of a fair trial"). .  However, only if we find that the state court's determination of the claim

20  was objectively unreasonable may the evaluation of the errors' impact on the jury verdict follow.  *See,*

21  *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710 (1993).

22              The Nevada Supreme Court denied the claim concluding:

23              [A]ppellant claimed that the cumulative effect of trial counsel's errors
              totally deprived him of representation.   As appellant failed to
24              demonstrate that he was prejudiced in any of the above claims, he failed
              to demonstrate that the errors of counsel totally deprived him of
25              representation.  Therefore, the district court did not err in denying this
              claim.

26

Exhibit 78, p. 4.

1    Plaintiff's reiteration of his contention that counsel's performance was inadequate and

2    that there were "redundant and enormous errors, blunders, omissions, oversights, lacking investigations,

3    [and] a tragic prevarication in open court to the judge and the petitioner" fails to demonstrate that the

4    state court's review of his claim resulted in an objectively unreasonable application of the law as

5    determined by the United States Supreme Court or that the facts established by that court were

6    objectively unreasonable. Petitioner failed to demonstrate that his counsel was ineffective in any regard.

7    Therefore cumulative error does not attach. This claim must be denied.

8    **III.    Conclusion**

9    Petitioner has failed to demonstrate that the state court improperly decided his claim for

10   relief pursuant to 28 U.S.C. § 2254(d). The petition shall be denied.

11   Should petitioner wish to appeal this decision, he must receive a certificate of

12   appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d

13   946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).

14   Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to

15   warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

16   483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's

17   assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In

18   order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

19   debatable among jurists of reason; that a court could resolve the issues differently; or that the questions

20   are adequate to deserve encouragement to proceed further. *Id.*

21   Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section

22   2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order

23   disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal

24   and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues

25   raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of

26   appealability, and determines that none meet that standard. The Court will therefore deny petitioner a

certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition (ECF No. 1) is denied in its entirely.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. The Clerk shall enter judgment accordingly.

Dated this 15th day of May, 2012.

_____
Gloria M. Navarro
United States District Judge